IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JAMES RUSSELL SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6-13-CV-03012-REL-SSA |
| ) | |
| CAROLYN COLVIN, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff James Russell Smith seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) failed to properly weigh the opinions of plaintiff's treating family physician and (2) failed to provide a proper residual functional capacity (RFC). I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## I.  *BACKGROUND*

On June 16, 2010, plaintiff protectively applied for disability benefits and supplemental security income benefits alleging that he had been disabled since December 30, 2009 (Tr. 153-59, 160-64). When he filed his claims, plaintiff alleged disability due to a combination of physical impairments (Tr. 208). Plaintiff's applications were denied on September 17, 2010 (Tr. 84-88). On October 17, 2011, a hearing was held before the ALJ (Tr. 32-74). On December 7, 2011, the ALJ found that plaintiff was not under a disability as defined in the Act. (Tr. 8-24). On November 15, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-6). Therefore, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  *STANDARD FOR JUDICIAL REVIEW*

Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively, provide for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

### III. *BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS*

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). If the plaintiff establishes that

he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. and 416.901, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. §§ 404.1520 and 416.920 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

>Yes = not disabled.
>No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits her ability to do basic work activities?

>No = not disabled.
>Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

>Yes = disabled.
>No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

>No = not disabled.
>Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

>Yes = disabled.
>No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and a vocational expert at the October 17, 2011 hearing, in addition to documentary evidence admitted at the hearing.

### A. ADMINISTRATIVE REPORT

The record includes the following report showing plaintiff's earnings for the years 1987 through 2010:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 1987 | $ 5,040.35 | 1999 | $12,107.47 |
| 1988 | 396.00 | 2000 | 15,455.73 |
| 1989 | 6,355.00 | 2001 | 14,054.50 |
| 1990 | 6,930.50 | 2002 | 12,085.08 |
| 1991 | 3,456.82 | 2003 | 16,839.18 |
| 1992 | .00 | 2004 | 16,403.15 |
| 1993 | 6,992.50 | 2005 | 18,116.19 |
| 1994 | 5,482.53 | 2006 | 21,094.62 |
| 1995 | 8,698.81 | 2007 | 17,312.64 |
| 1996 | 12,698.81 | 2018 | 15,313.35 |
| 1997 | 5,641.86 | 2009 | 7,077.55 |
| 1998 | 6,025.80 | 2010 | 406.88 |

(Tr. 169).

**B.     SUMMARY OF MEDICAL RECORDS**

As summarized by plaintiff and the Commissioner, medical evidence reveals clinical signs and laboratory findings of both physical and mental impairments.

**C.     SUMMARY OF TESTIMONY**

At the September 6, 2011 hearing, testimony was taken from plaintiff and Terri Crawford, M.Ed., a vocational expert (Tr. 113-15).

**1.     Plaintiff's testimony**

Plaintiff testified that he was born on December 30, 1968; weighed 305 pounds; left school in the middle of the 12th grade, did not graduate and does not have a GED, but

4

completed an 80-hour general electrical vocational course at the Ozark Technical Community College (OTCC); is not married and has no children; and lives alone in a house (Tr. 39-41).

When questioned as to what prevents him from working, plaintiff said that his lower back and knee pain bothers him the most (Tr. 43-44). Plaintiff reported a history of ankle injury and surgery, with residual pain(Tr. 51-52).

In addition to the musculoskeletal problems, plaintiff described problems with chronic obstructive pulmonary disease (COPD )with accompanying shortness-of-breath triggered by activity and environmental factors (Tr. 53-55)and diabetes that required the prescription of diabetic shoes to treat foot numbness and pain (Tr. 55-56).

Beyond his physical problems, plaintiff testified that he is anxious and is stressed by being around a group of people (Tr.57-58).

Plaintiff stated that he cooks, shops, does dishes and laundry, vacuums, cleans his house, and mows the yard (Tr. 44-45, 59-60). However, plaintiff testified that he does not drive because his license was suspended five years earlier for driving drunk (Tr. 46). Plaintiff reported that, once a week, he drinks a 12-pack of beer during a single day (Tr. 47).

**2.     Vocational expert testimony**

Terri Crawford, M. Ed., a vocational expert, testified at the request of the ALJ.

The expert opined that both the claimant's past relevant work as maintenance repair (industrial) and welder were skilled. Ms. Crawford classified the maintenance repair (industrial) as heavy as defined by the Dictionary of Occupational Titles (DOT), but very heavy as performed by plaintiff. The expert opined that the welder position was medium as defined by the DOT, but very heavy as performed by plaintiff (Tr. 64-65).

The ALJ posed a hypothetical question limited to light work. The hypothetical individual could lift 20 pounds occasionally and 10 pounds frequently; stand and walk one hour each, total, during an eight-hour workday; sit for six hours total during an eight-hour workday, and must be able to alternate between sitting and standing every thirty minutes. Such a person

could occasionally climb stairs and ramps but never climb ladders, ropes, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to cold, heat, wetness, humidity, irritants, chemicals, unprotected heights, and moving machinery (Tr. 65, 70). The expert opined that such a hypothetical individual could not perform any of plaintiff's past relevant work but could perform sedentary, unskilled occupations including charge-account clerk, order clerk (food and beverage), and final assembler (Tr. 65-66).

Ms. Crawford opined that the three identified occupations would remain if the hypothetical question was modified to reflect sedentary work, rather than light work, since the occupations she identified were sedentary due to the restriction to one hour of standing/walking (Tr. 67). However, the expert opined that the three identified jobs would be eliminated and there was no other competitive employment if the hypothetical question was modified to reflect never performing posturals (Tr. 67-68).

When the first hypothetical question was modified to include a restriction to only occasional contact with co-workers and supervisors and no contact with the general public, the expert responded that the final assembler position would remain (Tr. 68). However, the expert opined that all sedentary employment would be eliminated if the hypothetical individual could only occasionally handle, or if the individual engaged in fist-fights on the job (Tr. 71).

When referred to the RFC listed on an August 2011 *Medical Source Statement-Physical* form prepared by plaintiff's family physician, the expert opined that no occupational base would remain (Tr.72).

## V.   *FINDINGS OF THE ALJ*

On December 7, 2011, ALJ Dickie Montmayor entered his decision finding that plaintiff has not engaged in substantial gainful activity since December 30, 2009, the alleged disability onset date (Tr. 13). The ALJ found that plaintiff's severe impairments include COPD,

gross obesity, hypertension, degenerative disc disease, right-thigh paresthesias, left-ankle instability and reactive lymphedema, osteoarthritis of the right knee, and bilateral carpal-tunnel syndrome; and that plaintiff's non-medically determinable impairments include anxiety and depression (Tr. 13-14). The ALJ found that no impairment meets or equals the severity requirements of a Listing (Tr. 14). The ALJ found that plaintiff retains the ability to perform a wide range of sedentary work (Tr. 14-18). Although the ALJ found that plaintiff is unable to perform his past relevant work (Tr. 18), the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 19-208). Therefore, the ALJ concluded that plaintiff is not disabled (Tr. 20).

## VI.    *ANALYSIS*

### A.    MEDICAL OPINIONS

Plaintiff first argues that the ALJ erred in his assessing the weight given to medical opinions. The Commissioner argues that the ALJ property weighed all of the medical opinions.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment - specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who has not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a claimant's

7

activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. See McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013). In McDade, the court held that the ALJ's credibility finding was supported by substantial evidence when, among other factors, the ALJ considered that the plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart." Id. Similarly, in Clevenger, supra, the court held that it was "not unreasonable" for the ALJ to rely on evidence of the plaintiff's daily activities in finding that her assertion of disabling pain was not entirely credible. " Clevenger v. Soc. Sec. Admin., 567 F.3d. at 976.

On October 14, 2010, plaintiff underwent a consultative physical examination by Dorinda Faulkner, M.D., at the request of the State of Missouri's Medicaid Agency. At the conclusion of the examination, the physician opined that plaintiff was "functionally disabled from working" (Tr. 329-49).

In the Fall of 2010, plaintiff began treatment with Malcolm Oliver, M.D. On November 1, 2010 and August 12, 2011, Dr. Oliver prepared *Medical Source Statement-Physical* forms. The physician opined that plaintiff was limited to less than a full-range of sedentary work (Tr. 348-49, 372-73 ).

Plaintiff argues that the ALJ should have given Dr. Oliver's opinions controlling weight or at least, significant weight. In response, the Commissioner argues that the ALJ evaluated the physician's opinions and articulated valid reasons as to why the opinions warranted little weight.

First, the ALJ explained that the physician's opinions were check-list forms with no elaboration or citation to supporting records - they were just conclusions (Tr. 18). Brown v. Astrue, 628 F.3d 991 (8th Cir. 2011) ("A treating physician's Medical Source Statement [] in a social security disability benefits case, consisting of a series of check marks assessing RFC,

8

provides only conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record."); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion, which consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration). Such opinions are of no value to a decision maker.

Second, the ALJ noted that Dr. Oliver's opinions were inconsistent with his treatment notes (Tr. 18). An ALJ may discount a provider's opinion when it is not supported by the treatment notes. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ could properly discount a therapist's RFC when treatment notes were inconsistent with the opinion). Here, Dr. Oliver's treatment notes indicate plaintiff's diabetes was controlled, that plaintiff's COPD was better, and that plaintiff consistently had a normal range of motion, stability, and muscle strength (Tr. 360-61, 365, 392-93, 398, 402, 413-14). Additionally, Dr. Oliver ordered ex-rays that revealed only had mild arthritis in plaintiff's right knee (Tr. 398).

Finally, the ALJ found that the other medical evidence did not support Dr. Oliver's opinions (Tr. 18). Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount a treating physician's RFC." (internal quotations omitted)). Here, the medical evidence shows that plaintiff has full range of motion in his wrists; mostly full grip strength; good upper body and arm strength; little to no limit in the range of motion in his back; and fair range of motion in his ankles, with slightly less range of motion in his left ankle (Tr. 311-13, 316, 330-32). Plaintiff can even walk heel-to-toe and perform straight leg raises (Tr. 312, 333).Additionally, imaging reflects that plaintiff has only mild to moderate degenerative disk and joint disease in his back, mild degenerative changes and slight narrowing in his right knee, and mild degeneration of his left ankle joint (Tr. 333, 336-37).

I find that substantial evidence supports the ALJ's decision to discount Dr. Oliver's opinions.

9

Next, plaintiff argues that Dr. Faulkner's opinion supports Dr. Oliver's opinions and the claim for disability.

First, the ALJ observed that Dr. Faulkner's opinion that plaintiff is disabled and cannot work, improperly addressed the ultimate issue of plaintiff's ability to work, which is reserved for the Commissioner (Tr. 18). Robson v. Astrue, 526 F.3d 389, 393 (8th Cir. 2008); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that [plaintiff] is disabled or cannot be gainfully employed gets no deference because it invade the province of the Commissioner to make the ultimate disability determination."); 20 C.F.R. § 404.1527 and 416.927 (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"). Here, I find that the ALJ correctly gave no weight to this part of Dr. Faulkner's opinion.

Second, the ALJ found that the physician's opinion was "conclusory," as she provided no explanation or elaboration for her finding (Tr. 18). Wildman, 596 F.3d at 964. The ALJ properly discounted the unsupported assessment that plaintiff was disabled.

Finally, the ALJ found that Dr. Faulkner's opinion that plaintiff was functionally disabled was inconsistent with her examination findings (Tr. 18). In particular, during the examination, Dr. Faulkner observed that plaintiff walked into the examination room with a normal gait, and although he moved slowly and cautiously, plaintiff demonstrated a fair range of motion in his ankles, a good range of motion in his left knee, no restriction in range of motion in his back, and normal range of motion in his hips (Tr. 330-33). Dr. Faulkner also found that plaintiff had normal strength, sensation, balance, and reflexes in his arms and legs, and was not in any distress (Tr. 332-33). Furthermore, Dr. Faulkner observed plaintiff "smell[ed] of engine parts and grease," indicating plaintiff continued to work with and utilize his hands (Tr. 332). Finally, Dr. Faulkner noted that the imaging she ordered showed that plaintiff had only mild to moderate overexpansion of his lungs; mild to moderate degenerative disk and joint disease, with slight scoliosis in his back; mild degenerative changes and slight

10

narrowing in his right knee; and mild osteoarthritis in his left ankle (Tr. 333, 336-37). These examination notes simply do not support Dr. Faulkner's conclusion that plaintiff's conditions are severe enough to be disabling.

In summary, I find substantial evidence of the record as a whole supports the ALJ's weighing of the medical opinions.

B.  RFC ASSESSMENT

Next, plaintiff argues that the ALJ failed to provide the bridge between the RFC and the medical evidence. Plaintiff argues that by giving little weigh to the opinions of Dr. Oliver and Dr. Faulkner, the ALJ had no medical evidence to base his RFC. The Commissioner responds that the ALJ's RFC assessment of the evidence is adequately recounted in five pages of the opinion.

The Eighth Circuit has observed that an ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted); 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. Although formulation of the RFC is part of the medical portion of disability adjudication, it is not based only on "medical" evidence but, instead, is based on all the relevant and credible evidence in the record. McKinney, 228 F.3d at 863. Assessing a claimant's RFC is not solely a "medical question." Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct

11

correspondence between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to "provide evidence" about several factors, including residual functional capacity, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ may make his own assessment based on his review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010).

Here, although the ALJ gave the medical opinions little weight, the ALJ used Dr. Oliver's opinions as the basis of the RFC, adopting the basic sedentary framework with modifications.

As noted by the Commissioner, the ALJ considered the objective medical evidence, both clinical signs and laboratory findings. The ALJ recognized that the evidence is consistent with some restrictions; however, the judge also found that plaintiff's allegations were not fully credible.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The ALJ, however, must make express credibility determinations and set forth the inconsistencies that led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. Robinson, 956 F.2d at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: (1) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms, and (2) any measures other than treatment the individual uses or used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

Here, the ALJ noted that the treatment notes indicated that many of plaintiff's problems (e.g., the hypertension, diabetes, and COPD) have responded well to treatment (Tr. 15-16). The effectiveness of plaintiff's treatment is an appropriate credibility consideration. Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 729–30 (8th Cir. 2003) ("[I]mpairments that are controllable by medication do not support a finding of total disability."); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3.

The ALJ also observed that plaintiff generally received routine and conservative treatment for problems (Tr. 17). I, too, note that plaintiff has undergone no recent surgery for the musculoskeletal impairments, that there has been no hospitalization for a musculoskeletal condition, and that plaintiff's only hospitalization occurred in June 2011, and was brief because plaintiff left against medical advice (Tr. 377-81). Plaintiff has not required emergency room treatment for either physical or mental problems. Plaintiff has not undergone recent physical therapy, chiropractic adjustments, osteopathic manipulations, or acupuncture.

13

Plaintiff does not use an assistive device for ambulation and does not wear a TENS unit, a back brace, a cervical collar, a knee brace, or an ankle brace. This minimal treatment is inconsistent with plaintiff's allegations of disabling symptoms. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

An ALJ may consider a plaintiff's work history when evaluating his credibility. Pearsall, 274 F.3d at 1218; Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir.1993) (plaintiff's credibility is lessened by a poor work history). Here, the ALJ observed that plaintiff's history "raise[s] a question as to whether [plaintiff's] continuing unemployment is actually due to medical impairments and draws into question [his] motivation to work" (Tr. 17).

The ALJ also noted that plaintiff listed his weight as 300 pounds and his height as 5'9" when he filed his claims (Tr. 208); and calculated a Body Mass Index (BMI) of 44.3 and observed that BMIs of 30 or above are defined as obesity (Tr. 16). The ALJ noted that plaintiff smokes (Tr. 15). Both the obesity and the smoking are contraindicated as to the plaintiff's musculoskeletal and pulmonary conditions.

Finally, the ALJ discussed plaintiff's daily activities and found them inconsistent with his allegations. Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling impairments); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); 20 C.F.R. § 416.929(c)(3)(i). In a credibility analysis, consideration of daily activities is appropriate since allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations. Benskin, 830 F.2d at 883.

Here, the ALJ observed that plaintiff lives independently in a house, performs household chores (including laundry, dishes, vacuuming, and mowing the lawn), maintains his personal care, prepares his meals, shops at stores, maintains his finances (Tr. 215-22), fishes from a boat, and hunts from a blind (Tr. 16, 17). Medhaug, 578 F.3d at 817 ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent

14

with subjective complaints of disabling pain."); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (driving, fixing simple meals, doing housework, and shopping for groceries held to be "extensive daily activities" that did not support claimant's alleged inability to work). These activities are inconsistent with complaints of disabling pain and an inability to work.

I find that the ALJ correctly included only plaintiff's credible limitations in his RFC determination. Wildman, 596 F.3d at 966; Gragg v. Astrue, 615 F.3d 932, 940 (8th Cir. 2010); Heino v. Astrue, 578 F.3d 873, 882 (8th Cir. 2009).

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision finding plaintiff not disabled. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

March 6, 2014
Kansas City, Missouri